**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

TERRI MIEHLE-KELLOGG, *individually and as*
*Administratrix of the Estate of Walter Kellogg,*
*deceased*, and TERRI MIEHLE-KELLOGG,
*individually*,

                                     **MEMORANDUM**
                                     **AND ORDER**

                            *Plaintiffs*,          19-cv-04943 (GRB) (JMW)

          -against-

COUNTY OF SUFFOLK,

                            *Defendant*.
-------------------------------------------------------------------X

**A P P E A R A N C E S:**

        Mark C. Kujawski, Esq.
        **Kujawski & Kujawski PLLC**
        98 Carleton Avenue
        Central Islip, New York 11722
        *Attorney for Plaintiffs*

        Callan Wright Tauster, Esq.
        **Suffolk County Department of Law**
        H. Lee Dennison Building
        100 Veterans Memorial Highway
        P.O. Box 6100
        Hauppauge, NY 11788
        *Attorney for Defendant*

**WICKS**, Magistrate Judge:

       The issue presented in this latest motion to amend is whether New York's Executive Order

202.8 – enacted in response to the COVID-19 pandemic – effectively tolled (or added time) to the

limitations period of Plaintiff's § 1983 claims.  What might seem relatively straightforward has

become a Gordian Knot of sorts, as the New York Court of Appeals has rendered recent decisions

construing the operation of 202.8, as have several district courts within this Circuit.  For the

reasons that follow, since Executive Order 202.8 in fact tolled (or added) time to the period within which Plaintiffs' claims could be asserted, Plaintiffs' Second Motion to Amend the Complaint (ECF No. 47) is **GRANTED**.[1]

## BACKGROUND

### I.    Procedural History

Plaintiffs, Terri Miehle-Kellogg, individually and as Administratrix of the Estate of Walter Kellogg, and Terri Miehle-Kellogg ("Plaintiffs") originally commenced this action on August 29, 2019, asserting claims against Defendants "Officer John Doe," in both his individual and official capacities, the County of Suffolk, and the Suffolk County Police Department for: (i) violations of the Americans with Disabilities Act, 42 U.S.C § 12132 ("ADA"), (ii) municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) ("*Monell*"), (iii) violation of the right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments, and (iv) state law claims for negligence assault, battery, unlawful detention, negligent and intentional infliction of emotional distress, and intentional tort, arising out of the death of Mrs. Miehle-Kellogg's husband, Walter Kellogg, who was shot by Suffolk County Police Officer Frank Santanello ("Officer Santanello") on December 15, 2018. (*See* generally, ECF No. 1.) On January 31, 2022, Plaintiff first requested leave to amend the Complaint to substitute Office Santanello

---

[1] "While the Second Circuit has suggested in dicta and non-precedential opinions that a motion to amend is non-dispositive, it has yet to explicitly hold so. Thus, lower courts within this Circuit have taken two approaches when deciding motions to amend: some treat the motion as wholly non-dispositive, reviewable only for clear error, others treat the motion as dispositive if denying and non-dispositive if granting." *Covet & Mane, LLC v. Invisible Bead Extensions, LLC*, No. 21CIV7740 (JPC)(RWL), 2023 WL 6066168, at *5 (S.D.N.Y. Sept. 18, 2023) (internal citations omitted) (cleaned up). *See e.g., Pusepa v. Annucci*, No. 17-CV-7954 (RA) (OTW), 2024 WL 4579450, at *1 (S.D.N.Y. Oct. 25, 2024) ("A magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive."); *Portelos v. City of New York*, No. 12 Civ. 3141 (RRM) (VMS), 2015 WL 5475494, at *1 (E.D.N.Y. Sept. 15, 2015) ("[D]istrict courts in this circuit have generally found that denial of a motion to amend is dispositive, whereas granting a motion to amend is non-dispositive."). Accordingly, because the Court is denying Plaintiffs' Second Motion to Amend, the undersigned proceeds by Memorandum and Order rather than by Report and Recommendation.

for the "John Doe" defendant, and formally moved to amend the Complaint on May 10, 2022. (ECF No. 29.) Simultaneously, Defendants moved for summary judgment on all claims asserted in the Complaint. (ECF No. 27.)

On March 24, 2023, addressing both Plaintiffs' motion to amend and Defendants' motion for summary judgment, District Judge Gary R. Brown denied Plaintiffs' motion to amend the complaint to add the identity of Officer Santanello and dismissed the claims against John Doe. *See Miehle-Kellogg v. Doe*, No. 19-CV-4943(GRB)(JMW), 2023 WL 2632452, at *11 (E.D.N.Y. Mar. 24, 2023), *appeal withdrawn*, No. 23-669, 2023 WL 7182119 (2d Cir. Aug. 3, 2023). Judge Brown further dismissed Plaintiffs' "failure-to-train *Monell* claim, the ADA claim, and the state law claims," but denied Defendants' motion for summary judgment as to the "failure-to-supervise *Monell* claim." *Id*. at *1 ("[W]hile most of the claims are subject to dismissal, the Court finds that, drawing all inferences in [P]laintiffs' favor, sufficient disputed facts remain as to the failure-to-supervise claim regarding Officer Santanello and there is sufficient evidence supporting a *Monell* pattern or practice such that the claim must proceed to trial.").

Following completion of limited discovery (*see* Electronic Order dated October 16, 2023), and the parties' submission of the Joint Proposed Pretrial Order (ECF No. 43), on February 2, 2024, the undersigned returned this matter to Judge Brown as trial ready. (*See* Electronic Order dated February 2, 2024.) On July 30, 2024, Plaintiffs requested leave to renew their motion to amend the pleadings on the heels of two recent New York Court of Appeals' decisions *Favourite Ltd. v. Cico*, 243 N.E.3d 494, 496 (N.Y. 2024) ("*Favourite*") and *Jaime v. City of New York*, 237 N.E.3d 796 (N.Y. 2024) ("*Jamie*"). On August 1, 2024, Judge Brown withdrew Plaintiffs' letter requesting a pre-motion conference to renew plaintiff's motion to amend the pleadings and advised that any motions to amend the pleadings must be redirected to the undersigned. (*See* Electronic

3

Order dated August 1, 20234.) Plaintiffs filed their Second Motion to Amend on October 7, 2024 (ECF No. 47), which Defendants opposed that same day. (ECF No. 48.) The parties appeared for an oral argument on Plaintiffs' motion before the undersigned on December 11, 2024. (ECF No. 50.)

**II.    Factual Background**

The Court assumes the parties' familiarity of the factual background and procedural history of this case as described in Judge Brown's March 24, 2023 Memorandum of Decision & Order, *see Miehle-Kellogg* No. 19-CV-4943(GRB)(JMW), 2023 WL 2632452, at *1 (hereafter, the "M&O"), and includes only facts relevant to the instant motion to amend.

On December 15, 2018, Mrs. Miehle-Kellogg called 911 seeking help for her husband Walter Kellogg who was experiencing a mental health crisis. *Id*. Ms. Miehle-Kellogg told the dispatcher that her husband was suicidal, had a history of mental health issues, and was not acting violent towards anyone. *Id*. Officer Frank Santanello arrived at the house and then walked with Ms. Miehle-Kellogg toward the door of the house. *Id*. Upon approaching the doorway, Officer Santanello asked Mr. Kellogg to come outside and speak with him. *Id*. Ms. Miehle-Kellogg opened the door, and Mr. Kellogg came out with a 1.5-inch paring knife in his right hand. *Id*. Officer Santanello then asked about Mr. Kellogg's intentions. He replied, "I want to cut myself, I want to go to the hospital." *Id*.

Ms. Miehle-Kellogg took the knife out of her husband's hand, reached around Mr. Kellogg, and placed the knife on a microwave oven next to the door. *Id*. At this point, Ms. Miehle-Kellogg was standing just outside the door, Mr. Kellogg was in the doorway, and Officer Santanello was by a table in the yard across from the doorway. *Id*. Ms. Miehle-Kellogg walked a few steps in front of Mr. Kellogg, and then he took out a utility knife. *Id*. Mr. Kellogg lifted his shirt and said,

4

"I'm going to cut myself stem to stern," and proceeded to slice his skin with two cuts. *Id*. At this point, Ms. Miehle-Kellogg heard several gunshots. *Id*. When Ms. Miehle-Kellogg heard the shots, she was about three feet from her husband and the officer was behind her by the table. *Id*. According to Plaintiffs' ballistics expert, Officer Santanello shot Mr. Kellogg six times from a distance of greater than 36 inches. *Id*. Mr. Kellogg was likely within two or three feet of the front door when he was shot. *Id*. Ms. Miehle-Kellogg alleges she was unlawfully detained by the officer following the shooting. *Id*. Plaintiffs did not file a Notice of Claim pursuant to the New York State General Municipal Law in relation to any of the claims arising out of Mr. Kellogg's death. *Id*. at *2.

Officer Santanello has been the subject of at least twenty-one investigations by the Internal Affairs Bureau ("IAB") during his time as an officer. *Id*. Of the thirteen investigations regarding Officer Santanello's use of excessive force before Mr. Kellogg's death, the IAB found the allegations were unsubstantiated in eight instances and "exonerated" him in five. *Id*.. Following Mr. Kellogg's death, five IAB investigations found that allegations against Officer Santanello for failure to perform duty, making false statements, improper police conduct, unprofessional language, and rules and procedures violations were substantiated. *Id*.

The Complaint, filed on August 29, 2019, names an "Officer John Doe" as a defendant in both his individual and official capacities, and asserts (i) violations of the ("ADA"), (ii) municipal liability under *Monell*, (iii) violation of the right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments, and (iv) state law claims for negligence assault, battery, unlawful detention, negligent and intentional infliction of emotional distress, and intentional tort. (*See* generally, ECF No. 1.)  As determined by the M&O:

> That Frank Santanello was the officer who responded to the call and shot plaintiff-decedent is undisputed. Indeed, the County identified Officer Santanello as the only officer involved

in the shooting in its interrogatory responses provided to plaintiff on August 20, 2020. Further, [P]laintiffs filed a motion to compel production of Santanello's personnel file on October 2, 2020, demonstrating unequivocal knowledge of the "John Doe" officer's identity as of that date. And, on March 17, 2021, Officer Santanello was deposed at the County's office, a deposition defended by then Deputy Suffolk County Attorney Brian Mitchell.

*Miehle-Kellogg*, No. 19-CV-4943(GRB)(JMW), 2023 WL 2632452, at *5.

## III.   <u>Plaintiffs' First Motion to Amend</u>

As stated, Plaintiffs' First Motion to Amend sought to substitute the name of Officer Frank Santanello for the "Office John Doe." *Id*. at *1. The M&O ultimately denied Plaintiffs' first motion "due to the expiry of the relevant limitations periods" and emphasized that "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.'" *Id*. at *5 (quoting *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("*Hogan*"). The M&O noted that "while a defendant can initially be named as a John Doe defendant, failure to name that defendant within the applicable statute of limitations period requires dismissal of the claim" and, therefore,  "'John Doe' substitutions may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met[,]" and held that Plaintiffs could not satisfy the requirements of Rule 15(c):

> This is not a case in which [P]laintiffs were mistaken as to the identity of a party at the time of filing and now seek to remedy that misidentification. Rather, [P]laintiffs merely lacked knowledge of the officers' name at the time of filing. In this Circuit, amendment in this instance is impermissible [under Rule 15(c)(1)(C)][2].
>
> Under Rule 15(c)(1)(A), an amended pleading may relate back to an earlier-filed complaint when "the law that provides the applicable statute of limitations allows relation back. New York state law provides the three-year statute of limitations applicable to §

---

[2] Rule 15(c)(1)(C) provides that: "[a]n amendment to a pleading relates back to the date of the original pleading when . . .the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

1983 claim. The incident leading to Plaintiff-Decedent's death occurred on December 15, 2018, meaning the statute of limitations expired on December 15, 2021.

*Id*. at \*6 (internal citations omitted) (cleaned up).

The M&O further held that Plaintiffs' proposed amendment did not otherwise relate back to original Complaint under the New York Civil Practice Law and Rules ("CPLR") Section 1024, which "provide[s] a special amendment procedure for claims alleged against John Doe defendants." *Id*. Section 1024 provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. CPLR § 1024. The M&O reasoned that in order to "obtain the benefit of Section 1024, a plaintiff must demonstrate that he/she exercised due diligence, prior to the statute of limitations, to identity the defendant by name[,]" and found:

> Section 1024 does not provide a basis for [P]laintiffs' proposed amendment to relate back to the original date of filing. Plaintiffs did not file their request to amend the complaint until January 31, 2022, indisputably well after the statute of limitations had run. Plaintiffs were aware of Officer Santanello's identity, at the latest, as of his deposition on March 17, 2021—long before the statute of limitations had run. Further, [D]efendants had identified Officer Santanello in their August 20, 2020 responses to plaintiffs' interrogatories, giving [P]laintiffs even more time to properly amend. Though plaintiffs point to the County's delay in responding to their initial inquiry seeking the name of the officer involved in the shooting, this fact alone does not warrant a different outcome. Thus, [P]laintiffs' proposed amended complaint does not relate back under Section 1024.

*Id*. at \*7 (internal citations omitted) (cleaned up).[3] The Court denied Plaintiffs' First Motion to Amend to include Officer Santanello and dismissed the claims against John Doe. *Id*.

---

[3] The Court additionally rejected Plaintiffs' reliance on Rule 17(d) as grounds to amend: "Plaintiffs' invocation of Rule 17(d) similarly fails. Rule 17(d) provides that 'public officer who sues or is sued *in an official capacity* may be designated by official title rather than by name, but the court may order that the officer's name be added.' Thus, this section is inapplicable as to the claims asserted against Officer Santanello in his individual capacity. Therefore, any claims plaintiffs may have had against Officer Santanello in his individual capacity remain time barred. Assuming *arguendo* that plaintiffs are correct

IV.    __Plaintiffs' Second Motion to Amend__

Plaintiffs' Second Motion to Amend the Complaint again seeks to substitute Defendant "Officer Frank Santanello" for "Officer John Doe" pursuant to N.Y. CPLR § 1024, in light of New York State Court of Appeals decisions in *Favourite* and *Jamie*. (*See* ECF No. 47 at 1.) Plaintiffs contend *Favourite* and *Jamie* "resolved the dispute that the Executive Order 202.8 *tolled*, and did not merely *suspend*, time limits including substitutions under NY CPLR §1024." (*Id*. at 1-2) (emphasis added). To this end, Plaintiffs contend the time limit for the substitution in this case actually expired on August 1, 2022 – not December 15, 2021, as the M&O previously concluded, and therefore, Plaintiff's First Motion to Amend submitted on January 31, 2022 was timely. (*Id*. at 2.)

Plaintiffs reiterate that the incident giving rise to the instant litigation took place on December 15, 2018, and Plaintiffs commenced the instant action against Defendant on August 29, 2019, "utiliz[ing] NY CPLR §1024 to bring the action against the involved officer as the name of the officer who shot and killed [Mr. Kellogg] was not known at the time." (*Id*. at 4.) Subsequently, on March 20, 2020, New York passed Executive Order 202.8, which directed, in part:

> [A]ny specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled.

(*Id*.) (quoting N.Y. Exec. Order 202.8). The Governor of New York later issued nine subsequent executive orders that extended the suspension. (*See* Executive Order Nos. 202.14, 202.28, 202.38,

---

that the officer's name could be added as to the claims against him *in his official capacity*, the amendment would nonetheless be futile as the County is named in the complaint, rendering any 'official capacity' claims against Officer Santanello redundant." *Id*. at *7 (Fed. R. Civ. P. 17) (emphasis added)).

202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72.) Plaintiffs argue that "[a]bsent Executive Order No. 202.8, and the extensions of same, the time limit for a NY CPLR §1024 substitution in this case would have been December 15, 2021." (*Id*.) Plaintiffs further identify that following this Court's denial of their First Motion to Amend, the New York Court of Appeals issued two decisions on the impact that Executive Order No. 202.8, and the extensions of same, had on the applicable time limits – *Favourite* and *Jamie* – which both held that the Executive Orders "constituted a toll and not a stay, extending any statute of limitations or similar time limit that had not already expired as of March 20, 2020, were automatically extended by 228 days—whether it would otherwise have expired before November 3, 2020, or afterwards." (*Id*. at 5.) As such, Plaintiffs contend the "time limit to substitute a party pursuant to NY CPLR §1024 in this action was extended to August 1, 2022, and not December 15, 2021, at the Court previously calculated[,]" and, therefore, "as of January 31, 2022, the time Plaintiff sought to amend the complaint to substitute Santanello for Doe, the substitution time limit had not yet run." (*Id*.)

Even if the Executive Orders do not toll the statue of limitations under §1983, Plaintiffs argue they "toll a substitution under NY CPLR §1024." (*Id*. at 6.) Plaintiffs contend they do not "seek to *commence* an action but, instead, to amend a complaint in an existing action where a fictious name was used as Santanello's name was unknown prior to the commencement of the action." (*Id*. at 7.) Accordingly, if this "Court chooses not to apply the tolling of the Executive Orders to solely federal time limits," Plaintiffs maintain "the toll will nevertheless apply to this action due to the 'special amendment' created by state law under NY CPLR §1024" that was "used in denying the prior motion [to amend]." (*Id.* at 9.) Overall, Plaintiffs contend the time limit to substitute a party pursuant to NY CPLR §1024 in this action was extended to August 1, 2022 –

and not December 15, 2021 as the Court previously calculated – and Plaintiff' "previous motion to amend should be permitted to be renewed and granted." (*Id.*)

In their Response in Opposition, Defendants argue the cases cited to by Plaintiff "do not stand for the proposition that Executive Order 202.8 requires that the Court add an additional 228 days to the relevant limitations period, regardless of whether the original deadline fell within the 'tolling period.'" (ECF No. 48 at 7-8.) *First*, Defendants contend the New York Court of Appeals discussed Executive Order 202.8 and the applicable tolling/suspension period in *Favourite* "in a limited context" and "the relevant facts of that case are dissimilar to the instant one[:]"

> In *Favourite*, the Appellate Division, First Department dismissed plaintiffs' second amended complaint in its entirety for lack of standing, leaving only the defendants' counterclaims pending. The Supreme Court then granted plaintiffs leave to file a third amended complaint to cure the standing issue, despite defendants' objections that plaintiffs were instead required to file a new action. The Appellate Division sided with the defendants, holding that the Supreme Court had no discretion to grant leave to amend a complaint that had been dismissed by the Appellate Division, and that the amendment was time-barred.
>
> The Court of Appeals was then faced with the question as to whether the Appellate Division's decision required the plaintiff to commence a separate action, instead of seeking leave to file a third amended complaint. The Court of Appeals also touched on whether the motion to amend was timely—the Appellate Division order dismissing the complaint was made on March 3, 2020. On March 20, 2020, Governor Cuomo enacted Executive Order 202.8, which remained in effect until November 3, 2020. Plaintiff filed the motion seeking leave on January 8, 2021 and the Court of Appeals was deemed it timely.

(*Id.* at 8.) (citing *Favourite*, 243 N.E.3d at 502). Defendants contend the "major difference between *Favourite* and the instant matter is that the statute of limitations to file the motion seeking leave to amend would have run, but for Executive Order 202.8. . . . [h]ad the Executive Order not been enacted, [the] plaintiff in *Favourite* would have been required to file the motion within the six-month limit; or by September 3, 2020. Executive Order 202.8 was still in effect for another two months following the date the statute of limitations would have run in *Favourite.*" (*Id.* at 8-9.) (citing *Favourite*, 243 N.E.3d at 502).

Defendants contend that here, the date Plaintiffs' claims accrued was on December 15, 2018, requiring them to file their Complaint naming Santanello by December 15, 2021, and, as Executive Order 202.8 ended on November 3, 2020, "Plaintiffs still had over 13 months to file a motion seeking leave to amend the complaint before the statute of limitations ran." (*Id*. at 9.)  The Defendants argue they identified Santanello in their August 20, 2020 interrogatory responses, three months prior to the expiration of Executive Order 202.8, and Plaintiffs' counsel deposed Santanello on March 17, 2021, nine months prior to the statute of limitations deadline of December 15, 2021. (*Id*.) Defendants maintain "[t]he case law simply does not support Plaintiff[s'] argument that [they] should have been permitted an additional 228 days to amend [their] Complaint, despite the statute of limitations elapsing more than a year after Executive Order 202.8 ended." (*Id*.) Defendants further maintain that *Favourite* was a state court case involving a situation where the Plaintiff's complaint had been dismissed for lack of standing and note that no operative complaint existed in *Favourite* until the Court of Appeals overturned the Appellate Division decision and, by contrast, Plaintiffs' Complaint is "still operative, and the federal courts only permit interlocutory appeals in limited circumstances." (*Id*.) Defendants insist that Plaintiffs' remedy is "to file an appeal of the decision denying [their] leave to appeal at the conclusion of the trial court case" and that Plaintiffs "should not be able to circumvent the [F]ederal [R]ules by filing yet another motion to amend under the guise of updated state court case law." (*Id*.)

*Second*, Defendants argue *Jamie* is also distinguishable from the instant case. (*Id*.) Specifically, Defendants contend:

> [*Jamie*,] the other case cited by the Plaintiff, involved filing a late notice of claim against the City of New York pursuant to General Municipal Law §50-e. In such a case, notices of claim are required to be served within 90 days of the date of loss and the complaint to be served within a year and 90 days. [] *Jaime* barely touches on Executive Order 202.8.

The Court of Appeals merely stated that the Plaintiff did not provide a valid excuse for filing a late notice of claim, because his claims were set to expire only days after the pandemic began. The Court of Appeals found that '[i]f anything, the pandemic benefited him by giving rise to the executive orders that tolled his claims.' Again, this is yet another case where the statute of limitations elapsed during the period Executive Order 202.8 was active and thus, is inapplicable to the present case.

(*Id.*) (quoting *Jaime*, 237 N.E.3d at 806). *Finally*, Defendants argue that this Court's decision in

*Loeb v. Cnty. of Suffolk,* No. 22-CV-6410 (HG), 2023 WL 4163117, at *3 (E.D.N.Y. June 23,

2023) ("*Loeb*") resolves the issue of whether Executive Order 202.8 tolls or suspends the statue

of limitations for Section 1983 claims:

> *Loeb* was a federal civil rights matter in which the underlying criminal action was resolved via settlement agreement, wherein the plaintiff agreed, *inter alia*, to waive his rights to bring civil suit against Suffolk County. While Judge Gonzalez did find that the settlement agreement did constitute a valid waiver of the plaintiff's right to file a civil suit, he also found that the plaintiff's claims were time-barred. Specifically, Judge Gonzalez found that Executive Order 202.8 suspended, rather than tolled the time periods to which it applied. Judge Gonzalez stated that the plaintiff's three-year statute of limitations period ended on March 23, 2022, and that Executive Order 202.8 expired on November 3, 2020. Despite having a year and four months after the expiration of Executive Order 202.8 to file his complaint, Loeb did not do so until October 21, 2022.

> Judge Gonzalez also wrote that Executive Order 202.8 was enacted to preserve litigants' rights during the COVID-19 pandemic. Judge Gonzalez further opined that interpreting it as a toll rather than a suspension was 'contrary to the spirit of the Executive Order,' and that '[a]ny other interpretation would provide an unwarranted windfall to litigants, such as [p]laintiff, who had claims that did not expire during the emergency period covered by the Executive orders.'

(*Id.* at 10-11) (quoting *Loeb*, No. 22-CV-6410 (HG), 2023 WL 4163117, at *3). Defendants argue

that in this case, Plaintiffs' "rights were not impacted by the COVID-19 pandemic, as [they] had

over a year following the suspension of the [E]xecutive [O]rder, to amend [their] complaint" and

"[g]ranting [them] an additional 228 days on top of the three-year statute of limits would be a

windfall to Plaintiff, as warned by Judge Gonzalez." (*Id.* at 11.) As such, Defendants maintain

Plaintiffs' second motion to amend should be denied. (*Id.*)

In their Reply in Support, Plaintiffs argue that "contrary to Defendants' opposition, *Favourite* and *Jamie* together put to rest" the disputes as to whether the Executive Orders acted as a suspension or a toll, and held the Executive Orders constituted a toll. (ECF No. 47-3 at 4.) Plaintiffs' contend "there has been a clear shift in how Federal Courts are addressing the executive Order 202.8" – specifically, Plaintiffs rely on: (i) *McKinnies v. City of New York*, No. 23-CV-2567 (HG) (JRC), 2024 WL 4333703, at *4 (E.D.N.Y. Sept. 27, 2024); (ii) *In Re Nordlicht*, 115 F.4th 90 (2nd Cir. 2024); (iii) *Harris v. City of New York,* No. 22-CV-1763 (JGLC), 2024 WL 4335662, at *5 (S.D.N.Y. Sept. 27, 2024); (iv) *Liverpool v. City of New York*, No. 20-CV-4664 (ER), 2023 WL 7723165, at *8 (S.D.N.Y. Nov. 15, 2023); (v) *Powell v. United States*, No. 19 CIV. 11351 (AKH), 2022 WL 1645545, at *2 (S.D.N.Y. May 24, 2022); (vi) *Bull v. Howard*, No. 22-CV-766 (JLS), 2024 WL 1585762, at *1 (W.D.N.Y. Apr. 11, 2024); and (vii) *Newkirk v. City of New York*, No. 21-CV-6635, 2024 WL 3966096, at *1 (E.D.N.Y. Aug. 28, 2024) to support the proposition that the Executive Order 202.8 acted as a toll, such that Plaintiffs' First Motion to Amend was timely. (*Id*. at 5-9.)

## THE LEGAL FRAMEWORK FOR MOTIONS TO AMEND GENERALLY

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a). Pursuant to Fed. R. Civ. P. 15(a)(2), which provides that "[t]he court shall freely give leave when justice so requires." Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Communs Co. v. Best Yet Mkt., Inc*., No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that the amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692

(ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (internal quotations and citations omitted).  The movant must submit the proposed amended pleading to the motion, as was done here, specifying the new claims and/or parties intended to be added.  *See Nabatkhorian v. County of Nassau*, No. 12-CV-1118 (JS) (GRB), 2012 WL 13113646, at *1 (E.D.N.Y. Aug. 9, 2012).

The Second Circuit clarified the standard to be applied by the District Courts in considering motions for leave to amend dependent upon the timing of the proposed amendment:

> The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought. At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends— either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2). This is a "liberal" and "permissive" standard, and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility." The period of "liberal" amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up [to] a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021); *Johnson v. Barnett Outdoors, LLC*, No. 21-CV-6311 (MJP), 2023 U.S. Dist. LEXIS 208011, at *4 (W.D.N.Y. Nov. 20, 2023) (stating that Rule 15(a)'s standard must be balanced with Rule 16(b)'s good cause standard).

To this end, under Rule 16(b), "good cause" is required to modify a scheduling order like the Scheduling Order set by the previously assigned Magistrate Judge in the instant case. *See* ECF No. 10 (setting the deadline for motions to join new parties or amend the pleadings as June 26, 2020); Fed. R. Civ. P. 16(b)(4); *Sacerdote,* 9 F.4th at 115 ("[T]he period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will

14

be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)").  "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) ("The Rule 16(b)(4) 'good cause' inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment. The burden of demonstrating good cause rests with the movant.").

It is under this legal framework that the undersigned analyzes the instant application to amend.

## **DISCUSSION**

Plaintiffs' Second Motion to Amend seeks to substitute Office Santanello for the "John Doe" defendant, and as articulated in the M&O, "'John Doe' substitutions 'may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met.'" *Miehle-Kellogg*, No. 19-CV-4943(GRB)(JMW), 2023 WL 2632452, at *5 (quoting *Hogan*, 738 F.3d at 517). "[W]here the state law regarding relation back is more generous than the federal law, [however,] the state law will be applied. [N.Y. CPLR § 1024] provides a 'more forgiving principle of relation back' for cases involving John Doe defendants and will therefore be applied.'" *Id.* at *6 (quoting *Hogan*, 738 F.3d at 518). For the reasons stated, the undersigned finds Plaintiffs' proposed amendment to add Officer Santenello as a named defendant in place of John Doe is permitted under Rule 15(c)(1)(A) and N.Y. CPLR § 1024.

Rule 15(c) provides, in relevant part:

> An amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15 (c)(1)(A)-(C)(i)-(ii) (emphasis added).

Relevant here, under Rule 15(c)(1)(A), an amended pleading may relate back to an earlier-filed complaint when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15 (c)(1)(A). "New York state law provides the three-year statute of limitations applicable to §1983 claim[s]," and "[t]he incident leading to [Mr. Kellogg's] death occurred on December 15, 2018, meaning the statute of limitations [and the time limit for substitution] expired on December 15, 2021[,]" and, therefore, under normal circumstances, Plaintiffs' First *and* Second Motions to Amend would have been untimely under Rule 15(c)(1)(A). *Miehle-Kellogg*, No. 19-CV-4943(GRB)(JMW), 2023 WL 2632452, at *6 (citing *Montague v. City of Rochester*, No. 21-1598-pr, 2022 WL 16558154, at *1 (2d Cir. 2022)); *Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) ("[w]hen a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes."). However, the undersigned finds tolling under Executive Order 202.8 applies here and renders Plaintiffs' first request to amend – made on January 31, 2022 – timely.

In general, federal courts "apply the New York rule for tolling that statute of limitations." *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980); *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002) (internal citations omitted) ("Because the

Supreme Court wanted section 1983 actions to be subject to state tolling rules, it seems likely that both statutory and common law rules are to be borrowed."). "However, the Court is not to apply the state tolling rule if it would 'defeat the goals' of Section 1983." *Bonilla v. City of New York*, No. 20CV1704RJDLB, 2020 WL 6637214, at *2–3 (E.D.N.Y. Nov. 12, 2020) (quoting *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007)).

The COVID-19 pandemic temporarily paralyzed courts and court proceedings.  "On March 7, 2020, Governor Cuomo issued Executive Order 202.8 declaring that, '[i]n accordance with the directive ... to limit court operations to essential matters during the pendency of the COVID-19 health crisis, any specific time limit for the commencement ... of any legal action ... is hereby tolled from the date of this executive order until April 19, 2020.'" *Uzoigwe v. Charter Commc'ns, LLC*, No. 23 CV 7383 (HG)(LB), 2024 WL 1311525, at *4 (E.D.N.Y. Mar. 18, 2024), *report and recommendation adopted*, No. 23CV07383HGLB, 2024 WL 1756503 (E.D.N.Y. Apr. 24, 2024) (quoting New York State Executive Order 202.8). "This EO was extended by 'a series of nine subsequent [EOs],' with the last extension ending on November 3, 2020, for a total period of 228 days." *Id.* (quoting *Barry v. Royal Air Maroc*, No. 21-CV-8481, 2022 WL 3215050, at *4 (S.D.N.Y. July 8, 2022), *report and recommendation adopted*, No. 21-CV-8481, 2022 WL 3214928 (S.D.N.Y. Aug. 9, 2022)).

"As a threshold matter, Executive Order 202.8 does not defeat the goals of Section 1983… [r]ather, it advances the goals of 'deterrence and compensation' by permitting Plaintiff[s] ample time to pursue [their] claims during a global pandemic." *Bonilla*, No. 20CV1704RJDLB, 2020 WL 6637214, at *2–3 (quoting *Abbas*, 480 F.3d at 641) (holding that Magistrate Judge Bloom's decision to rely on the "State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim" in applying the executive order to Plaintiff's Section 1983 claims

was not clearly erroneous or contrary to law). Accordingly, "[t]here is no question that the state's 'procedural laws' governing tolling are 'tolling rules' that should be 'borrowed'" here. *Id.* at *3 (quoting *Pearl*, 296 F.3d at 81.)

"Ambiguity [once] exist[ed] regarding the effect of [] Executive Order" 202.8 – specifically, as to whether it *tolled* or *suspended* the applicable statute of limitations. *Bonilla v. City of New York*, No. 20 CV 1704 (RJD)(LB), 2020 WL 6686531, at *2 (E.D.N.Y. Oct. 3, 2020), *aff'd*, No. 20CV1704RJDLB, 2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020).[4] However, "[t]he overwhelming number of cases in this Circuit have applied New York Executive Order 202.8 to toll claims," including those brought under 42 U.S.C. § 1983. *See Newkirk v. City of New York*, No. 21-CV-6635, 2024 WL 3966096, at *1 (E.D.N.Y. Aug. 28, 2024) (Cogan, J.).  Indeed, the New York Court of Appeals recently affirmed that construction. *See Favourite Ltd. v. Cico*, 42 243 N.E.3d 494, 502 (N.Y. 2024) (emphasis added) ("Executive Order 202.8 *tolled* all filing periods until November 3, 2020."); *Jaime v. City of New York*, 237 N.E.3d 796, 801 (N.Y. 2024) (202.8 tolled all limitations periods due to the COVID-19 pandemic); *see also McKinnies v. City*

---

[4] "A 'toll' of a statute of limitations for any reason . . . stops the clock of the statute of limitations from ticking. The time that the limitations period is tolled for [such reason] is added to the calendar computation once the toll is lifted." Hon. Mark C. Dillon, *An Overview of Tolls of Statutes of Limitations on Account of War: Are They Current and Relevant in the Post-September 11th Era?*, 13 N.Y.U. J. Legis. & Pub. Pol'y 315, 354 (2010). For example, "if a statute of limitations is tolled for 365 days, the action or proceeding can be commenced one year after the limitations period would have expired had there been no toll." *Id.* "By contrast, a 'suspension' of the statute of limitations simply extends the expiration date of the limitations period to a later defined date on the calendar." *Id.* For example, "[i]f a statute of limitations is suspended for 365 days, the time for commencing an action expires at the end of the suspension, without re-starting the statute of limitations clock at the end of that period." *Id.* "Here, if there was a toll, the period from the Governor's first order on March 20, 2020, to his last order on November 3, 2020, [*i.e.*, 228 days] would be added to the statute of limitations for every person with a claim who had not filed suit by March 20, 2020, and would also be added to every type of litigation deadline that arose during the suspension period." *Baker v. 40 Wall St. Holdings Corp.*, 74 Misc. 3d 381, 383–84, 161 N.Y.S.3d 723, 725 (N.Y. Sup. Ct. 2022), *rev'd*, 226 A.D.3d 637, 208 N.Y.S.3d 680 (2024) ("*Baker*"). "With a suspension, a party can only benefit from the Executive Orders if his or her statute of limitations or filing deadline fell within the suspension period." *Id.*

*of New York*, No. 23-CV-2567 (HG) (JRC), 2024 WL 4333703, at *4 (E.D.N.Y. Sept. 27, 2024) (quoting *Bonilla*, No. 20-cv-1704, 2020 WL 6637214, at *2) ("[C]ourts in this Circuit have found that the COVID-19 executive orders do apply to claims arising under Section 1983 because the executive orders do not 'defeat the goals' of Section 1983, but rather 'advance[ ] the goals of deterrence and compensation by permitting [a] [p]laintiff ample time to pursue [her] claims during a global pandemic.'"); *In re Nordlicht*, 115 F.4th 90, 113 (2d Cir. 2024) (emphasis added) ("Executive Order 202.8 *tolled* any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding."); *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc*., No. 22 CIV. 2716 (CM), 2023 WL 2346337, at *1 (S.D.N.Y. Mar. 3, 2023) (emphasis added) ("[I]n light of the COVID pandemic, Governor Cuomo had issued Executive Order 202.8, which *tolled* the statute of limitation for the filing of any claim brought under New York law (including the claims in suit) during the period March 20, 2020 through November 3, 2020. This added a total of 228 days to the otherwise applicable [statute of] limitations period"); *Bell v. Saunders*, No. 920CV00256BKSTWD, 2022 WL 2064872, at *5 (N.D.N.Y. June 8, 2022) ("District courts in this Circuit have agreed and found that Executive Order 202.8 and subsequent orders tolled the statute of limitations period from March 20, 2020 through November 3, 2020, a total of 228 days.").

To this end, the Court finds Executive Order 202.8 tolled the applicable statute of limitations here as follows:

| | |
|---|---|
| *Date of the Incident*: | December 15, 2018 |
| *Statute of Limitations Expiration Date*: | December 15, 2021 |
| *Statute of Limitations Expiration Date Applying 228-Day Tolling Period Under 202.8*: | July 31, 2022 |

Therefore, applying the tolling as required under 202.8, Plaintiffs' first request to amend made on January 31, 2022, was timely.[5] *See e.g.*, *Harris v. City of New York*, No. 22-CV-1763 (JGLC), 2024 WL 4335662, at *5 (S.D.N.Y. Sept. 27, 2024) ("Executive Order issued during the COVID-19 pandemic tolled the applicable statute of limitations for 228 days. Thus, the expiration of the statute of limitation[s] [was] extended from December 6, 2021 to July 22, 2022."); *Liverpool v. City of New York*, No. 20-CV-4664 (ER), 2023 WL 7723165, at *8 (S.D.N.Y. Nov. 15, 2023) (applying tolling under 202.8, finding "a statute of limitations that expired on September 6, 2021, would extend to April 23, 2022"); *Newkirk*, No. 21-CV-6635, 2024 WL 3966096, at *1 (applying 202.8, extending December 11, 2021 statute of limitations deadline to April 1, 2022); *Bull v. Howard*, No. 22-CV-766 (JLS), 2024 WL 1585762, at *1 (W.D.N.Y. Apr. 11, 2024) (while the limitations period applicable to Plaintiff's claims would have elapsed on April 12, 2022, the tolling from March 20, 2020 to November 4, 2020 pursuant to the COVID-19 Executive Orders extended the April 12, 2022 deadline to November 27, 2022).

In support of their position that Plaintiffs' first request for leave to amend was untimely, Defendants primarily rely on this Court's June 23, 2023 decision in *Loeb v. Cnty. of Suffolk*, which held that Executive Order 202.8 *suspended* – but did not *toll* – the statute of limitations in a Section 1983 action. No. 22-CV-6410 (HG), 2023 WL 4163117, at *2-3 (E.D.N.Y. June 23, 2023) ("Executive Order 202.8 was issued in part to preserve litigants' rights during the COVID-19 pandemic, which presented extraordinary difficulties for, among other things, filing, obtaining counsel, and utilizing court services such as *pro se* offices. Interpreting Executive Order 202.8 as

---

[5] Plaintiffs did not raise the issue of whether Executive Order 202.8 tolled the applicable statute of limitations here in their First Motion to Amend, and therefore, this Court applied December 15, 2021 as the applicable statute of limitations in finding that Plaintiff's First Motion to Amend was untimely. *See* ECF Nos. 29, 32. Since then, the New York Court of Appeals has clarified and confirmed that 202.8 operates as a toll.

a toll rather than a suspension is contrary to the spirit of the Executive Order."). In reaching this conclusion, *Loeb* relied on two New York state court decisions – *Baker* and *Cruz v. Guaba,* 74 Misc. 3d 1207(A), 159 N.Y.S.3d 828 (N.Y. Sup. Ct. 2022), *rev'd*, 226 A.D.3d 964, 210 N.Y.S.3d 425 (2024) ("*Cruz*"), which held that Executive Order 202.8 "did not toll all statutes of limitations, but only suspended them, due to the COVID-19 Pandemic." *Baker*, 74 Misc. 3d at 383–84. However, since *Loeb* was decided, the Appellate Division has recently reversed both decisions to clarify that 202.8 did in fact *toll* the applicable statute of limitations period. *See Cruz v. Guaba*, 210 N.Y.S.3d 425, 426 (N.Y. App. Div. 2d Dep't 2024) ("In March 2020, at the time the tolling provision of then Governor Cuomo's executive orders went into effect, the plaintiff had approximately 10 months remaining on the three-year limitations period to commence this action. This remaining period started to run after the toll was lifted on November 4, 2020, and the plaintiff [timely] commenced this action approximately 6 months later."); *Baker v. 40 Wall St. Holdings Corp*., 208 N.Y.S.3d 680, 681 (N.Y. App. Div. 2d Dep't 2024) (internal citations omitted) ("[D]ue to the tolling provision of the executive orders, the statute of limitations within which the plaintiff was required to commence this action was tolled between March 20, 2020, and November 3, 2020, a period of 228 days. Thus, this action, which was commenced against [defendant] on July 29, 2021, was commenced against that defendant within the statute of limitations.").[6]

---

[6] Similar to the instant case, Baker's applicable statute of limitations period of three years started to run March 1, 2018. *Id*. at 680. On July 29, 2021, Baker filed a second supplemental summons and second amended complaint, adding Star–Delta as a defendant. *Id*. at 681. Star–Delta moved to dismiss the second amended complaint "insofar as asserted against it as time-bared, contending that the action was not timely commenced against it within the applicable three-year statute of limitations." *Id*. In finding that Baker's July 29, 2021 addition of Star–Delta was timely, the Appellate Division further noted: "[c]ontrary to Star–Delta's contention, this toll of the statute of limitations did not only apply to statutes of limitations that expired between March 20, 2020, and November 3, 2020." *Id.*

Accordingly, applying Executive Order 202.8 as interpreted by the majority of courts in this Circuit and now New York's highest court, the Court finds the statute of limitations period for Plaintiffs' § 1983 claims was tolled for 228 days, and the period therefore expired on July 31, 2022, such that Plaintiffs' first request to amend made on January 31, 2022, was timely. *See V.S. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (this Court is "bound to apply the law as interpreted by …. the state's highest court"). Plaintiffs' proposed amendment to substitute Officer Santenello at this stage is therefore permitted under Rule 15(c)(1)(A).

Likewise, the Court finds amendment is permitted under Section 1024 of the CPLR, which "provide[s] a special amendment procedure for claims alleged against John Doe defendants[:]"

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

*Miehle-Kellogg*, No. 19-CV-4943(GRB)(JMW), 2023 WL 2632452, at *6 (citing N.Y. CPLR § 1024).

Because Plaintiffs first requested to amend the complaint to substitute Officer Santenello on January 31, 2022, well before the statute of limitations deadline of July 31, 2022, as tolled by Executive Order 202.8, the Court finds Plaintiffs have "'exercise[d] due diligence, *prior to the statute of limitations*, to identity the defendant by name.'" *Id.* (quoting *Hogan*, 738 F.3d at 519) (emphasis added); *see also Barrett v. City of Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017) ("Section 1024's 'due diligence' requirement is not forgiving. The onus of identifying an officer defendant's name, or at least making a good faith effort, lies on the plaintiff."); *see e.g.*, *Bell*, No. 920CV00256BKSTWD, 2022 WL 2064872, at *5 ("[B]ecause Plaintiff filed his motion to amend (attaching a proposed amended complaint naming Christopher Winchell as a defendant) before

the statute of limitations period, as tolled by the Executive Orders, expired, Defendant's motion

to dismiss Plaintiff's claims on statute of limitations grounds is denied").[7]

## **CONCLUSION**

For the reasons stated herein, Plaintiffs' Motion to Amend the Complaint (ECF No. 47) is

**GRANTED**. Plaintiffs are directed to file their Amended Complaint substituting Officer

Santenello for Defendant "John Doe" on or before December  20, 2024.


Dated:          Central Islip, New York
                December 16, 2024

                                            **SO ORDERED:**

                                            /S/ *James M. Wicks*
                                            JAMES M. WICKS
                                            United States Magistrate Judge

---

[7] "Even when a claim would otherwise be timely, a Court still has the discretion to deny leave to amend a complaint when there has been bad faith, undue delay, or undue prejudice to the opposing party. In the Second Circuit, the practice is to allow a party to amend a pleading in the absence of a showing by the nonmovant of prejudice or bad faith." *Bonilla*, No. 20 CV 1704 (RJD)(LB), 2020 WL 6686531, at *3 (internal citations omitted) (cleaned up). Here, the Court finds there has been "no bad faith or undue delay on [Plaintiffs'] part" and Defendants "have suffered no prejudice from the delay." *Id*. With respect to 'undue prejudice,' courts consider whether amendment would: '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Alicea v. City of New York*, No. 1:16-CV-07347 (JLR), 2023 WL 3724131, at *3 (S.D.N.Y. May 30, 2023) (quoting *Block v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir. 1993)). Although briefly raised for the first time at Oral Argument, Defendants do not sufficiently establish "any prejudice by the granting of [Plaintiffs'] motion." *Bonilla,* No. 20CV1704 (RJD)(LB), 2020 WL 6637214, at *3; ECF Nos. 48, 50.