UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TERRI MIEHLE-KELLOGG, Administratrix of the Estate of
WALTER KELLOGG, deceased, and TERRI MIEHLE-
KELLOGG, individually,

              *Plaintiffs*,

      -against-

FRANK SANTANELLO, INDIVIDUALLY AND IN HIS
CAPACITY AS A POLICE OFFICER OF THE SUFFOLK
COUNTY POLICE DEPARTMENT, COUNTY OF
SUFFOLK, and SUFFOLK COUNTY POLICE
DEPARTMENT,

              *Defendants*.
-------------------------------------------------------------------X

FILED
CLERK
9/17/2025
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM AND ORDER**

19-CV-4943 (GRB) (JMW)

**A P P E A R A N C E S:**

    **William P. Nolan, Esq.**
    666 Old Country Road, Suite 207
    Garden City, NY 11530
    *Attorney for Defendant Frank Santanello*

    **Mark C. Kujawski, Esq.**
    Kujawski & Kujawski
    98 Carleton Avenue
    Central Islip, NY 11722
    *Attorney for Plaintiffs*

    *No appearance by Suffolk County*

**WICKS,** Magistrate Judge:

    Plaintiffs Terri Miehle-Kellog ("Terri"), Administratrix of the Estate of Walter Kellogg, deceased (the "Decedent"), and Terri, individually (collectively, the "Plaintiffs") commenced this action against the Defendants Frank Santanello ("Santanello") individually and in his capacity as a Police Officer of the Suffolk County Police Department, County of Suffolk

1

("Suffolk") and Suffolk County Police Department ("SCPD" and collectively, the "Defendants") alleging claims pursuant to 42 U.S.C. §1983 and state law claims of negligence as well as intentional tort for damages sustained following an incident involving Defendants that resulted in the Decedent's death.[1] (*See generally*, ECF No. 52.) On the heels of this now six-year-old trial ready action, the Court reopened discovery to allow for limited discovery of to permit Santanello to take Plaintiff's deposition. (*See* ECF No. 67.)

Now before the Court is Defendant Santanello's Motion to Disqualify Plaintiffs' Counsel due to what Santanello claims is a conflict of interest (ECF No. 72). Santanello was represented by the firm, Davis & Ferber, while Santanello was a Suffolk County Police Officer in connection with grand jury proceedings and internal affairs investigations following the events leading to decedent's death. (ECF No. 72-6 at 1.) Counsel for Plaintiffs, Mark C. Kujawski ("Kujawski"), is "of counsel" to Davis & Ferber, and as such, Santanello argues that Kujawski should be disqualified "due to his direct conflict of interest here that is directly adverse to … Santanello." (*Id.*) For the reasons that follow, Defendant Santanello's Motion to Disqualify (ECF No. 72) is **DENIED**.

## THE LEGAL FRAMEWORK

The Court is guided by both the American Bar Association ("ABA") Model Code and New York's Rules of Professional Conduct ("RPC") to determine disqualification motions. *See Leber Assocs., LLC v. Entm't Group Fund, Inc.*, No. 00-cv-3759 (LTS) (MHD), 2001 U.S. Dist. LEXIS 20352, at *5 (S.D.N.Y. Dec. 7, 2001). "In assessing a motion to disqualify counsel, the Court must 'balance a client's right freely to choose his counsel against the need to maintain the

---

[1] For a full recitation of the factual and procedural histories in this matter, the Court refers the reader to ECF No. 51.

2

highest standards of the profession.'" *Kong v. Lindenbaum*, No. 24-CV-4808 (AMD) (JRC), 2025 WL 1808757, at *1 (E.D.N.Y. July 1, 2025) (quoting *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)).

Disqualifying counsel has "a serious and immediate adverse effect by denying the client his choice of counsel." *Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979). Indeed, courts – which have wide discretion in deciding disqualification motions – should be "loathe to separate a client from" chosen counsel. *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979). This fundamental precept, coupled with the risk for potential abuse of these types of motions for "tactical purposes," is why motions for disqualification are subject to strict scrutiny in the federal courts. *See Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989); *see also Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 300 (E.D.N.Y. 2009) (internal citations omitted) ("Indeed, it is well-established that '[m]otions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are 'often interposed for tactical reasons' and result in unnecessary delay.'").

At bottom, in federal court, motions to disqualify should only be granted where the court concludes that there is a "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *see also Galloway v. Nassau Cnty.*, No. 19-CV-5026 (AMD) (JMW), 2021 WL 5013735 (E.D.N.Y. Oct. 27, 2021). Thus, the movant shoulders a heavy burden and must establish *specific facts* warranting the disqualification. *See Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791, 794 (2d Cir. 1983); *White v. Cnty. of Suffolk*, No. 20-CV-1501 (JS)(JMW), 2023 WL 8788914, at *5 (E.D.N.Y. Dec. 19, 2023) (same). Conclusory statements merely parroting the language of the applicable Rule of Professional Conduct will not suffice. More is required.

## FACTS UNDERLYING THE ALLEGED CONFLICT

On December 15, 2018, Decedent was pronounced dead following a shooting incident involving SCPD and Santanello. (ECF No. 52 at 1-2.) Kujawski filed the Complaint on August 29, 2019, on behalf of his clients, Plaintiffs. (*See generally*, ECF No. 1.) At the time the instant action was commenced, there was no named officer. (*Id.*) On December 17, 2024, upon the filing of the Amended Complaint (ECF No. 52), Santanello was a named defendant. (*Id.* at ¶ 3.) On July 21, 2020, Santanello provided testimony in grand jury proceedings. (ECF No. 72-3.) According to Kujawski, before and throughout the grand jury proceedings, Kujawski never represented Santanello, or any other Defendant in this matter. (ECF No. 74-1 at 2.) It is undisputed that the firm of Davis & Ferber was counsel to Santanello for both the grand jury proceedings and internal affairs investigations. (ECF No. 72-6 at 2.) During Santanello's deposition held in March of 2021, Kujawski still did not represent any Defendant. (ECF No. 74 at 4.) Indeed, Santanello was represented by the Suffolk County Attorney's Office. (ECF No. 72-5 at 3.)

Kujawski began his affiliation with Davis & Ferber in March of 2022. (ECF No. 74 at 5.) The relationship that Davis & Ferber and Kujawski have is "strictly limited to referrals from Kujawski to the firm." (*Id.*) At that same time, Kujawski began working in Washington, D.C. and, as a result referred both personal injury and medical malpractice cases to several firms, which included Davis & Ferber. (ECF Nos. 74-1 at 3; 74-2 at 1-2.) It was not until July of 2022, when Kujawski was given the title of "Of Counsel" at Davis & Ferber and it was "simply to inform referred clients that Plaintiffs' counsel can still be contacted if needed." (ECF No. 74-1 at 4.) Kujawski maintains his own New York office and his relationship with Davis & Ferber is one-sided, meaning that only he refers cases, not the other way around. (*Id.*)

4

## DISCUSSION

Santanello argues that once he became a named defendant, Kujawski, counsel to Plaintiffs, should be disqualified due to a "direct conflict" because Kujawski is "Of Counsel" to the firm Davis & Ferber, who represented Santanello in grand jury proceedings and internal affairs investigations. (ECF No. 72-6 at 1, 4-5.) Kujawski, while working with Davis & Ferber, had (or likely had) access to privileged matters of Santanello. (*Id.* at 9.) With that, Santanello argues that the chance that Kujawski had confidential and privileged information in connection to Santanello and his current representation of Plaintiffs is detrimental to Santanello. (*Id.* at 4.) Likewise, Santanello states that under the successive representation test, disqualification is warranted. (*Id.* at 8.) Finally, Santanello avers that this motion is timely, and any delay is a result of Kujawski's doing as he should have disqualified himself once Santanello became a named defendant.[2] (*Id.* at 10.)

Kujawski denies all allegations and maintains that these claims are "factually baseless" because he never was associated with Santanello's case, nor did he represent him. (ECF No. 74 at 1.) Each argument is analyzed separately below.

New York's Rules of Professional Conduct command that "a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property, or other personal interests." NYRPC § 1.7(a). "Where a conflict is alleged," and "the representation is concurrent, it is 'prima facie improper for an attorney to simultaneously represent a client and another party with interests directly adverse to that client.'"

---

[2] Santanello's Reply reiterates the same arguments as the moving papers. (*See* ECF No. 75.)

5

*Spagnuoli v. Louie's Seafood Restaurant, LLC*, 20 F. Supp. 3d 348, 357 (E.D.N.Y. 2014) (citing *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)).

> [Moreover, in] the context of a conflict of interest arising out of dual representation of clients, courts in the Second Circuit apply one of two distinct rules with respect to disqualification. The more stringent of the two, known as the per se rule, pertains to situations involving the continuous, simultaneous and/or concurrent representation of clients. The second rule, requiring the courts to apply a substantial relationship test, pertains in two situations: (1) when disqualification concerns a former client; and (2) for cases of vicarious or attenuated representation. Unlike the substantial relationship test which purpose is to prevent the possibility that the former clients confidences will be used to his [or her] disadvantage, the per se test mandates that adverse representation of a current client is in and of itself improper. Nevertheless, the attorney sought to be disqualified may rebut this presumption by demonstrating that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of representation.

*Anderson v. Nassau Cnty. Dep't of Corr.*, 376 F. Supp. 2d 294, 297–98 (E.D.N.Y. 2005) (internal citations and quotations omitted) (emphasis in original).

"[T]he status of the relationship [between an attorney and the parties] is assessed at the time that the conflict arises, not at the time that the motion to disqualify is presented to the court." *Castillo Abreu v. Alvarez*, No. 21-CV-1641 (RER) (VMS), 2024 WL 5251985, at *2 (E.D.N.Y. Dec. 31, 2024) (quoting *Anderson*, 376 F. Supp. 2d at 298). That means the "standard for concurrent representation applies even if the representation ceases prior to the filing of a disqualification motion." *Id.* (quoting *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009)).

Here, Santanello was never represented by Kujawski. Rather, Kujawski is "Of Counsel" to the firm that represented Santanello during the grand jury investigations and proceedings at the time of the incident. (*See* ECF Nos. 72-2; 72-5.) Moreover, Kujawski in his affirmation states that he did not have a connection, nor was he employed with Davis & Ferber during the grand

6

jury proceedings in October of 2020 or during Santanello's deposition held on March 17, 2021. (ECF No. 74-1 at 2-3.) Indeed, Steven B. Ferber, founding partner of Davis & Ferber, in his affirmation confirmed that Kujawski had no relationship with Davis & Ferber until the year of 2022, which was after the grand jury investigation and Plaintiff's deposition. (*See* ECF No. 74-2.)

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and [the client's] interests diverge with respect to a material factual or legal issue or to a course of action." *Superb Motors Inc. v. Deo*, No. 23-CV-6188 (JMW), 2023 WL 8358062, at *4 (E.D.N.Y. Dec. 1, 2023), *reconsideration denied*, No. 23-CV-6188 (JMW), 2025 WL 1456754 (E.D.N.Y. May 21, 2025) (quoting *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002)). However, absent a client-relationship or evidence that concurrent representation existed, Santanello's argument lacks merit. Additionally, since Kujawski is not concurrently representing Plaintiffs and Santanello, NYRPC § 1.7(a) is inapplicable.

Moreover, "Courts in the Second Circuit disqualify attorneys 'only in essentially two kinds of cases: [i] where an attorney's conflict of interests ... undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly [ii] where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation.'" *Painter v. Turing Pharms., LLC*, No. 17-CV-7558 (CBA) (LB), 2018 WL 10529533, at *1 (E.D.N.Y. Aug. 7, 2018) (citations omitted). Santanello's argument mirrors that of the second kind. Yet, Plaintiffs' Counsel was never in a position to receive privileged information as indicated above, his "Of Counsel" role with Davis & Ferber began after the grand jury commencement and the deposition. Mr. Ferber's affirmation also

7

demonstrated Kujawski's role with the firm. That is, referring personal injury and medical malpractice cases and not receiving any cases in return. (ECF No. 74-2 at 2.) Mr. Ferber also stated that Kujawski has never received access to the firm's files or databases, and that remains true today. (*Id.*) Therefore, there is no concurrent DISQUALIFYING conflict leading to disqualification.

Next, Santanello argues disqualification based on the successive relationship test, asserting the same arguments. (ECF No. 72-6 at 8.)

> The standard for successive representations is not as strict. Where a case involves successive representation, "disqualification is warranted where: '(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client.'"

*Tour Tech. Software, Inc. v. RTV, Inc.*, No. 17-CV-5817 (MKB) (CLP), 2018 WL 3682483, at *3 (E.D.N.Y. Aug. 2, 2018) (citations omitted).

Santanello asserts that there is an "undeniable substantial relationship" between the prior case and the instant matter, and Kujawski had access to the privileged information related to the prior case. (ECF No. 72-6 at 9.) However, this argument fails because Santanello is not a former client of Kujawski's, and Mr. Ferber affirmed that Kujawski had no access then nor now to the firm's files. *See Zappin v. Comfort*, No. 18-CV-1693, 2019 WL 409831, at *3 (S.D.N.Y. Feb. 1, 2019) ("As described above, the threshold issue for successive conflicts under both New York ethical rules and the Second Circuit is whether the movant has a prior attorney-client relationship with the lawyer or firm sought to be disqualified. Here, RR has never represented Zappin.") Therefore, the successive relationship test is not satisfied to disqualify counsel.[3]

---

[3] Santanello also cites to ABA Rules 1.9 and 1.10, which in sum state that a lawyer who formerly represented a client must not represent another with a substantially related case unless consent is

Finally, the concept of imputing conflicts on a firm was addressed by the Second Circuit in *Hempstead Video*, where the Court explained that,

> [a]n attorney's conflicts are ordinarily imputed to his firm based on the presumption that "associated" attorneys share client confidences. … As discussed below, however, attorneys with limited links to a firm are not always considered to be "associated" with the firm for purposes of conflict imputation. Although some courts have treated the presumption that confidences are shared within a firm as irrebuttable, … [w]e believe the better approach for deciding whether to impute an "of counsel" attorney's conflict to his firm for purposes of ordering disqualification in a suit in federal court is to examine the substance of the relationship under review and the procedures in place. The closer and broader the affiliation of an "of counsel" attorney with the firm, … the more appropriate will be a rebuttable imputation of the conflict of one to the other. Conversely, the more narrowly limited the relationship between the "of counsel" attorney and the firm, and the more secure and effective the isolation of nonshared matters, the less appropriate imputation will be.

409 F.3d 127, 130–36 (2d Cir. 2005) (finding no conflict where lawyer's "of counsel" relationship with the firm "was too attenuated and too remote from the matter in question"); *see also Katena Computing Techs., Inc. v. DeNaut*, No. 23-MC-48 (SDV), 2023 WL 6858717, at *11 (D. Conn. Oct. 4, 2023) (discussing *Hempstead Video's* of-counsel conflict standard).

Here, Kujawski argues that he is designated as "Of Counsel" for the sole purpose of informing his referrals that he can be contacted, if need be. (ECF No. 74-1 at 4.) In addition, he maintains a distinct independent office, one not with Davis & Ferber. (*Id.*) As mentioned above, Kujawski refers cases to Davis & Ferber and the referrals only are from Kujawski and not reciprocal. (*Id.*) Moreover, Kujawski has never received access to firm files or databases. (ECF No. 74-2 at 2.) (*Id.*) *See Hempstead Video*, 409 F.3d at 130 (discussing that the attorney had no access to client files). Thus, following the Second Circuit's guidance, as the relationship between Davis & Ferber and Kujawski is limited, imputing a conflict on Davis & Ferber is minimal. *Id.* at

---

provided. *See* M.R.P.C. §§ 1.9(a)-(b); 1.10(a). However, both rules here are not applicable. As there is no conflict of interest found pursuant to Rule 1.7, and it has already been established that Kujawski has no connection with Santanello's previous matter with Davis & Ferber, disqualification is not appropriate under these grounds.

135. In addition, imputation is rebuttable and with the above, Kujawski has provided the Court with enough to decline disqualification.

Accordingly, Santanello has not met the strict burden, Kujawski is not disqualified, and the motion is denied.

## CONCLUSION

For the reasons stated, Defendant Santanello's Motion to Disqualify (ECF No. 72) is **DENIED**.

Dated: Central Islip, New York
September 17, 2025

S O   O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge